UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KARL SILVA,

                Petitioner,

– against –                     **MEMORANDUM & ORDER**

STATE OF NEW YORK,                     19-cv-06799 (ERK)

                Respondent.

KORMAN, *J*.:

      On September 12, 2012, Shamar Lewis traveled to the Supreme Court building in Brooklyn for an appearance. ECF No. 5-2 at 21. Petitioner Karl Silva and co-defendant Nigel Honore were in front of the courthouse and threatened Lewis as he went inside. *Id*. A few hours later, Lewis left the courthouse and began walking to his car with two friends. *Id*. Petitioner and Honore began following the group, shouting and cursing. *Id*. Petitioner slashed one of Lewis's friends in the neck with a knife, then both men chased Lewis with knives until they were able to back him into a parked car, overpower him, and stab him twice in the chest. *Id*. Lewis survived the attack, was transported to a hospital, and later filed a police report. *Id*. While in custody at Rikers Island, petitioner mailed Honore a copy of Lewis's report to police. *Id*. Honore posted copies of the report all over Lewis's neighborhood. *Id*. Petitioner also mailed Lewis a letter threatening him not to testify. *Id*. Petitioner was convicted in New York of assault in the first degree and intimidating a witness in the third degree. The court sentenced petitioner to consecutive prison terms of fifteen years followed by five years of post-release supervision on the assault charge and sixteen months to four years for witness intimidation.

1

Petitioner's counseled brief on direct appeal argued that the prosecutor's allegedly improper comments during the opening statement and summation deprived petitioner of his right to a fair trial. ECF No. 5-2 at 2–15. In a pro se supplemental brief, petitioner pressed the argument that the prosecutor's comments were improper and raised two additional grounds relevant to this petition: (1) the accidental submission of two pages of phone transcripts to the jury deprived him of a fair trial, and (2) his lawyer was ineffective for failing to ask follow-up questions to the jurors about how much of the transcripts they had read before alerting the judge to the mistake. *Id.* at 54. The Appellate Division held that the claim of prosecutorial misconduct was unpreserved and meritless, and rejected all the claims raised in petitioner's pro se supplemental brief as meritless. *People v. Silva*, 175 A.D. 3d 515, 515 (2d Dep't 2019). Petitioner filed a pro se application for leave to appeal, which the Court of Appeals denied. *People v. Silva*, 34 N.Y.3d 984 (2019).

## DISCUSSION

Petitioner seeks habeas relief on the grounds that (1) the "trial court erred [by] providing the jury with phone transcripts that were never admitted into evidence, which he contends "denied . . . his right to confrontation" under the Sixth Amendment, (2) the prosecutor engaged in misconduct by failing to "stay within the 4 corners [of the record evidence] and "often referring to matters not supported by evidence nor witness testimony," and (3) his trial counsel was ineffective for failing to "ask adequate questions," particularly regarding the jury's opportunity to view the phone records accidentally given to them by the court. ECF No. 1 at 5–8.

A. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") allows a federal court to grant habeas relief to a state prisoner only if a state court's adjudication "resulted in a decision that

2

was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409–10 (2000). A decision "involves an unreasonable application" of federal law where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams,* 529 U.S. at 407–08. A petitioner must therefore demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is a "highly deferential standard," requiring that state courts "be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation omitted). However, "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 562 U.S. at 102.

Where a state court denies a claim on the merits without explaining its reasons, a petitioner still bears the burden to show "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. In those cases, "a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision," and then accord deference if "it is possible [that] fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* at 102; s*ee also Shinn v. Kayer*, 592 US. __, 2020 WL 7327827, at *5 (2020) (per curiam) ("[W]e must determine what arguments or theories . . . could have supported the state court's determination. . . . Then, we must assess whether fairminded jurists could disagree on the correctness of the state court's decision if based on one of those arguments or theories.") (internal quotation marks omitted).

3

B. *Phone Transcripts*

Petitioner argues that he was denied a fair trial because jurors were inadvertently exposed to items not in evidence during deliberations. ECF No. 1 at 5. At trial, the prosecution introduced recordings of phone calls petitioner and Honore made from Rikers Island. *See* ECF No. 5-1 at 133–35, 953–66. During deliberations, the jury requested transcripts of those calls. *Id.* at 1115. The court explained that it could not provide the transcripts because they were presented to the jury as an interpretive aid and were not themselves in evidence. *Id.* The jury then asked for the audio recordings of the phone calls themselves, which the court provided along with the transcripts. *Id.* at 1120. The jury then notified the court that one of the transcripts "has extra pages which we have not read but are unsure what to do with." *Id.* at 1156. The extra pages transcribed audio recordings of calls that had not been entered into evidence. *Id.* at 1157–59. Petitioner's trial counsel moved for a mistrial, arguing that the extra pages "undermine[] the whole l[i]nchpin of my argument that Lewis has a vendetta against these two guys who were buddies" because they could be read to suggest that petitioner did not know Honore very well. *Id.* at 1163. After questioning the jurors individually the court denied the application because it found that only two jurors had briefly scanned the pages before alerting the court, those jurors did not recall the contents of what they had seen, all jurors understood that the extra pages were not to be considered, and that all jurors could remain fair and impartial. *Id.* at 1176–77.

Petitioner has failed to show that the Appellate Division unreasonably applied federal law in rejecting his claim. Petitioner focuses on the Confrontation Clause of the Sixth Amendment. *See* ECF No. 1 at 5. The Confrontation Clause is not implicated here because Honore's out-of-court statements contained in the phone transcripts were not testimonial in nature, *Crawford v. Washington*, 541 U.S. 36, 54–55 (2004), nor did they amount to "powerfully incriminating

4

extrajudicial statements" by a co-defendant under *Bruton v. United States*, 391 U.S. 123, 135 (1968).

In any event, petitioner's claim would fail because, on habeas review, Confrontation Clause violations are subject to harmless error analysis set out in *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993). *United States v. Vitale*, 459 F.3d 190, 195 (2d Cir. 2006); *Gilocompo v. Laclair*, 2021 WL 355148, at *14 (E.D.N.Y. Feb. 2, 2021). The victim of the assault and intimidation — Lewis — testified against petitioner. ECF No. 5-1 at 69. The government introduced evidence that petitioner and Honore had twice shot at Lewis in the past, in one case wounding him in the leg. *Id.* at 8–9, 74–77, 864–65. Although Lewis was the only witness capable of identifying petitioner and Honore, multiple eyewitnesses testified to the same version of events. *Id.* at 69, 436–40, 500–04, 640–72, 789–805. Parts of the attack were also captured on surveillance video. ECF No. 5-2 at 27–29. Petitioner was arrested by police less than a mile from the scene a short time after the attack took place because he matched the description given by an officer who had chased Lewis's assailant. ECF No. 5-1 at 527–31, 535, 549, 592–96. When the pursuing officer arrived, he observed that petitioner's height, weight, general appearance, clothing, and hat all matched those of the man he had seen attack Lewis and flee the scene. *Id.* at 530–32, 556. From Rikers Island, petitioner made multiple phone calls — calls that *were* authenticated and introduced into evidence — to co-defendant in which he conspired to intimidate Lewis, and later sent Lewis a threatening letter. *Id.* at 95–96, 131–35, 958–67. The overwhelming evidence against petitioner establishes that any potential violation of the Confrontation Clause did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623.

The Sixth Amendment also "secures to criminal defendants the right to trial by an impartial jury." *Skilling v. United States*, 561 U.S. 358, 377–78 (2010). However, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation."

5

*Smith v. Phillips*, 455 U.S. 209, 217 (2012). "[T]he law presumes prejudice from a jury's exposure to extra-record evidence," but "that presumption may be rebutted by a showing that the extra-record information was harmless." *United States v. Farhane*, 634 F.3d 127, 168–69 (2d Cir. 2011) (internal quotations omitted). That inquiry is objective and "focuses on two factors: (1) the nature of the information or contact at issue, and (2) its probable effect on a hypothetical average jury." *Id.* (internal quotation omitted). A court "may not inquire into the degree upon which the extra-record information was used in deliberations and the impression which jurors actually had about it," but "may appropriately consider the circumstances surrounding the introduction of the information in making its determination." *United States v. Greer*, 285 F.3d 158, 173 (2d Cir. 2002).

The Appellate Division could have reasonably concluded that the hypothetical average juror would not have been swayed by the improperly submitted items. Only two jurors — numbers four and six — had a chance to "skip[] through" the pages together, and both claimed not to have discussed the contents with the other jurors. ECF No. 5-1 at 1170–72. Juror six also claimed not to remember what the pages said. *Id.* at 1172. The judge individually questioned all twelve jurors to confirm that they could remain fair and impartial and would follow instructions not to consider extra-record evidence. *Id.* at 1168–76. "[C]onfirmation of a juror's ability to follow cautionary instructions can indicate the lack of harm from [error]." *Farhane*, 634 F.3d at 169. Indeed, the court in this case went a step further than the district court in *Farhane*, where the Second Circuit held that it was not an abuse of discretion to decline to question all jurors individually to ensure continued impartiality and adherence to instructions. *Id.* at 170.

Here, too, the overwhelming evidence against petitioner was itself enough to render any potential error resulting from the jury's exposure to the phone transcripts harmless under *Brecht*. The substance of the calls themselves reinforces this conclusion. Petitioner argued in his direct appeal that the transcripts "<u>destroyed</u> the defense's theory . . . that [petitioner] and Honore were

6

good friends and [] the complainant Mr. Lewis had given fabricated testimony" because they suggested petitioner and Honore were not actually close. ECF No. 5-2 at 71–72. But the government never contested the fact that petitioner and Honore were friends. Indeed, Lewis testified for the government that he met Honore through petitioner and that he would "[h]ang out [and] smoke reefer" with them. ECF No. 5-1 at 67–68. Petitioner's argument that Lewis fabricated his testimony would not have been impacted one way or the other by the nature of petitioner's relationship with Honore, and nothing in the transcripts undercuts the weight of the other evidence. The Appellate Division reasonably rejected petitioner's federal claims related to the phone transcripts.

C. *Prosecutor's Comments*

Petitioner argues that the prosecutor committed misconduct by referring to matters not in evidence and inflaming the jury. ECF No. 1 at 6. Petitioner bears a heavy burden because "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Young*, 470 U.S. 1, 11 (1985); *see also United States v. Newton*, 369 F.3d 659, 680 (2d Cir. 2004). The burden is yet heavier on habeas review, where I must distinguish "between ordinary trial error of a prosecutor and that sort of egregious misconduct . . . [which] amount[s] to a denial of constitutional due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647–48 (1974). "[A] prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

Petitioner challenges the District Attorney's statement in opening that "nobody comes here with clean hands," which he argues improperly implied that he had the burden to prove otherwise. ECF No. 5-2 at 9. He also objects to the District Attorney's statement in closing that petitioner

7

and Honore were "hunting Shamar Lewis" on the day they attacked him. ECF No. 5-1 at 1033. These comments fall far short of the line for constitutional error, if they can be called error at all. In *Darden*, the prosecutor told the jury that he wished the victim "had blown [petitioner's] face off" with a shotgun, or that "someone had walked in the back door [during the crime] and blown his head off." 477 U.S. at 180 n.12. The Court denied habeas relief, explaining that "Darden's trial was not perfect—few are—but neither was it fundamentally unfair." *Id.* at 183. The Appellate Division could reasonably have held that the prosecutor's comments did not rise to the high bar of constitutional error. Moreover, even if there were error in petitioner's case, "the overwhelming eyewitness and circumstantial evidence to support a finding of guilty on all charges reduced the likelihood that the jury's decision was influenced" by any impropriety. *Id.* (internal quotation omitted).

Petitioner also argues that the prosecutor falsely suggested to the jury that one of the government's witnesses had identified him. ECF No. 5-2 at 75. In fact, the witness had recounted speaking to two individuals following Lewis without identifying them as petitioner and Honore. ECF No. 51 at 790–91. Petitioner's counsel objected to the prosecutor's statement during the summation, and the court instructed the jury that their recollection of the testimony controlled. *Id.* at 1041–42. At the request of petitioner's trial counsel, the court also gave a curative instruction clarifying that the witness had never identified petitioner or Honore. *Id.* at 1052–56. "We assume that a jury applies the instructions it is given," *Chalmers v. Mitchell*, 73 F.3d 1262, 1267 (2d Cir. 1996), and petitioner has failed to fit the prosecutor's comments into any of the "narrow exception[s]" to that "almost invariable assumption." *Richardson v. Marsh*, 481 U.S. 200, 206–7 (1987). The prosecutor's comments were improper, but the court's instructions were adequate to remedy any error.

D. *Ineffective Assistance*

Petitioner argues that his counsel was ineffective, particularly when arguing for a mistrial after the phone transcripts were submitted to the jury. ECF No. 1 at 8. Petitioner must show that (1) his counsel's performance was deficient, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Federal habeas courts conduct a "doubly deferential" review of ineffective assistance of counsel claims denied on the merits by state courts, as petitioner's claim was. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). A reviewing court must first "take a 'highly deferential' look at counsel's performance" under *Strickland* and then examine whether the state court's decision to deny relief under that standard was "necessarily unreasonable." *Cullen*, 563 U.S. at 190. To succeed, a habeas petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and then demonstrate that "there is no possibility fairminded jurists could disagree" that the state court's contrary determination conflicts with clearly established federal precedents. *Harrington*, 562 U.S. at 102; *see also Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010).

Petitioner has not carried his burden. Contrary to petitioner's description, the record reflects that his trial counsel effectively, albeit unsuccessfully, advocated for his application for a mistrial. Indeed, petitioner's trial counsel raised the same arguments for the prejudicial effect of the phone transcripts that petitioner advances in this proceeding. *See* ECF No. 5-1 at 1162–65. The fact that those arguments were unsuccessful in state court, as they are here, does not render trial counsel's advocacy for them ineffective. Petitioner also contends that his trial counsel failed to object to the form of the court's questioning of jurors and adequately follow up on arguably inconsistent statements by jurors four and six. Trial counsel could reasonably have concluded that these tactics would have been futile or counterproductive given that (1) the phone transcripts were

9

at best weakly prejudicial, (2) both exposed jurors claimed not to have discussed the transcripts with the rest of the jury, and (3) the court had confirmed that the jurors could disregard the phone transcripts and remain fair and impartial. *See United States v. Abad*, 514 F.3d 271, 276 (2d Cir. 2008) (counsel cannot be deemed ineffective for failing to take action that would have been futile). The Appellate Division reasonably applied *Strickland* in rejecting petitioner's claim.

## CONCLUSION

The petition for relief pursuant to 28 U.S.C. § 2254 is denied. A certificate of appealability is denied.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York  
February 12, 2021

Edward R. Korman  
United States District Judge